```
 1                     UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF KENTUCKY
 2                           LOUISVILLE DIVISION

 3
     UNITED STATES OF AMERICA,     )    Case No. 3:22-CR-00070-DJH
 4                                 )
              Plaintiff,           )
 5                                 )
     v.                            )
 6                                 )
     JALYN REDD,                   )
 7                                 )    March 16, 2023
              Defendant.           )    Louisville, Kentucky
 8

 9                              * * * * *

10                       TRANSCRIPT OF SENTENCING
                    BEFORE HONORABLE DAVID J. HALE
11                    UNITED STATES DISTRICT JUDGE

12                              * * * * *

13   APPEARANCES:

14   For United States:      Marisa J. Ford
                             U.S. Attorney's Office
15                           717 West Broadway
                             Louisville, KY 40202
16
     For Defendant:          Bradley D. Clark
17                           Suhre & Associates
                             333 West Vine Street, Suite 300
18                           Lexington, KY 40507

19   [Defendant present.]

20

21
                       Dena Legg, RDR, CRR, CCR-KY
22                        Official Court Reporter
                           232 U.S. Courthouse
23                         Louisville, KY 40202
                              (502) 625-3778
24
     Proceedings recorded by certified stenographer, transcript
25   produced by computer.
```

1           (Begin proceedings in open court at 9:46 a.m.)
2                    DEPUTY CLERK:  3:22-CR-70, United States of America v.
3     Redd.
4                    MS. FORD:  Good morning, Your Honor.  Marisa Ford on
5     behalf of the United States.
6                    MR. CLARK:  Good morning, Your Honor.  Bradley Clark
7     on behalf of Mr. Redd.  That is Mr. Redd seated with us.
8                    THE COURT:  If you would have Mr. Redd join you there
9     at the podium.
10                   MR. CLARK:  Mr. Redd.
11                   THE COURT:  Mr. Clark, have you and Mr. Redd received
12    and reviewed the presentence investigation report?
13                   MR. CLARK:  Yes, Your Honor.
14                   THE COURT:  Mr. Redd, have you had enough time to go
15    through the PSR with Mr. Clark?
16                   THE DEFENDANT:  Yes, Your Honor.
17                   THE COURT:  I'm sorry?
18                   THE DEFENDANT:  Yes, Your Honor.
19                   THE COURT:  Let's see.  Are there any remaining
20    objections to the report, Mr. Clark, that we need to take up?
21                   MR. CLARK:  No, Your Honor.
22                   THE COURT:  Let's discuss the guideline calculations
23    as they are found in the report.  The offense level computation
24    begins on page 6.  Paragraph 18 notes that Counts 1 and 2 are
25    grouped for guideline purposes.  The base offense level then for

1   violation of 18 U.S.C. Section 2119 and Section 1951(a) is found
2   in Guideline 2B3.1.  That sets the base offense level here at
3   20.  Because a firearm was brandished in this case, the
4   guidelines add five levels to the calculation.  And as noted in
5   paragraph 21, because the offense involved carjacking, two
6   levels are added.  That gets to an adjusted offense level of 27,
7   and after all three levels of acceptance of responsibility are
8   credited -- and, Ms. Ford, I presume the United States has no
9   objection to the third level.
10            MS. FORD:  We do not, Your Honor.
11            THE COURT:  That results in a total offense level of
12  24.  Mr. Redd's minimal criminal history means that he falls in
13  Category I.  And, thus, a total offense level of 24 in a
14  Category I yields a recommended custody range of between 51 and
15  63 months, a fine range of 20,000 to 200,000, and a supervised
16  release of between one and three years.
17       Have I stated the calculations correctly as they're found in
18  the PSR?
19            MS. FORD:  You have, Your Honor.
20            MR. CLARK:  Yes, Your Honor.
21            THE COURT:  In the absence of any further objections,
22  I will adopt the PSR and note that it will be filed in the
23  record under seal.  Of course, it will be available to the
24  court, parties, and counsel in the event of an appeal.
25       Do we have any motions to take up at this time?

```
1              MS. FORD:  No, sir.
2              MR. CLARK:  No, Your Honor.
3              THE COURT:  Let's then talk about the factors set out
4    by Congress in Title 18 of the U.S. Code at Section 3553(a).
5    I'll start with you, Mr. Clark.
6              MR. CLARK:  Yes, Your Honor.
7              THE COURT:  And let me say at the outset I have
8    reviewed the parties' sentencing memoranda.
9              MR. CLARK:  Yes, Your Honor.  As the Court is well
10   aware and opposing counsel is, the guidelines are only advisory,
11   but sometimes they get it right.  And here we believe they did,
12   and we believe that the prosecution's recommendation at the
13   bottom of the guidelines is correct.
14       If we look at the factors under 18 U.S.C. 3553(a),
15   obviously, the nature and characteristics of the offense are
16   concerning, but the nature and characteristics of Mr. Redd are
17   mitigating.  And so this being a relatively -- and I don't want
18   to diminish the seriousness nature of the offense, but a
19   relatively run-of-the-mill offense for this variety, a guideline
20   sentence is appropriate.
21       And we believe those mitigating factors, such as his youth,
22   such as his lack of criminal history, and because the Government
23   is in agreement, that a bottom of the guideline sentence is
24   appropriate.  And if we look at all the factors, including the
25   necessity to promote respect for the law, this sentence would be
```

sufficient but not greater than necessary to effectuate that purpose.

Additionally, as the Court's aware, looking at 3553(a)(6) -- in my sentencing memo, we included the JSIN data. Nationally defendants that are sentenced under this guideline with this criminal history level are receiving a sentence actually slightly below the bottom of the guidelines, a mean sentence of a 46 and a median length of 48. So to the extent that suggests what the sentence should be, the bottom of the guidelines or even perhaps a slight downward variance would be appropriate.

And so I think, looking at those factors, given Mr. Redd's individual characteristics, the bottom of the guidelines or even that national average would be appropriate, Your Honor.

MS. FORD: Judge, I don't really have anything to add beyond what Mr. Clark just said. Obviously, carjacking is a violent crime, and the potential for serious bodily injury, even death, is always there. And we're always fortunate when we don't have it.

The mitigating factors -- this defendant's relative youth and the fact that he doesn't have an extensive prior criminal history, we believe, are adequately taken into account by the sentencing guidelines.

These -- it was a (B) plea in this case. So, of course, the Government's recommendation is not binding on the Court, but we believe a sentence at the low end of the advisory guideline

```
1    range in this case adequately punishes the offense and reflects
2    both the serious nature of the crime as well as the mitigating
3    factors with regard to this defendant that Mr. Clark has
4    described.
5              THE COURT:  Anything further, Mr. Clark?
6              MR. CLARK:  No, Your Honor.
7              THE COURT:  Does Mr. Redd wish to address the court?
8              THE DEFENDANT:  No, Your Honor.
9              MS. FORD:  Judge, before you announce your sentence, I
10   do need to for the record address the issue of restitution,
11   which is mandatory in this case.
12       As the Court is probably aware, a predecessor of mine, who's
13   no longer in the office, negotiated these pleas, and the plea
14   agreements are silent on the issue of restitution.
15       We didn't receive a victim impact statement, but the case
16   agent reached out to the victim.  And the Ford Fusion that was
17   stolen in this case was -- has been returned to the victim, and
18   the victim reported no additional monetary losses.  So we're not
19   asking for entry of an order of restitution in this case.
20             THE COURT:  Very well.  Thank you.
21       Anything further to come before the court by way of argument
22   or discussion before I announce the sentence?
23             MR. CLARK:  No, Your Honor.
24             MS. FORD:  No, sir.
25             THE COURT:  I have carefully considered the
```

1   presentence investigation report.  I have reviewed, of course,
2   the advisory guidelines, which we just addressed.  I have also
3   considered the factors set out in 18 U.S.C. 3553(a) as well as
4   the written and spoken arguments of counsel.  I will impose the
5   following sentence:
6       It is the judgment of the court that the defendant, Jalyn
7   Redd, is committed to the custody of the Bureau of Prisons for a
8   term of 48 months as to each of Counts 1 and 2 in the
9   indictment, which shall be served concurrently, for a total term
10  of 48 months' imprisonment.
11      Upon release, Mr. Redd shall be placed on supervised release
12  for a term of three years as to each of Counts 1 and 2, which
13  shall be served concurrently, for a total term of three years.
14      While on supervised release, Mr. Redd shall abide by the
15  standard conditions of supervision adopted by the court as well
16  as the special conditions that have been detailed in Part G of
17  the PSR.  These include substance abuse treatment and testing
18  and mental health counseling.  The U.S. Probation Office will
19  answer any questions Mr. Redd may have regarding the
20  requirements of these conditions.
21      He is required to pay a special penalty assessment fee of
22  $100 as to each count for a total here of $200.  Restitution, as
23  we have just discussed, is not an issue.  I'm going to waive
24  imposition of a fine as well as the associated costs of
25  investigation, prosecution, incarceration, and supervision due

1  to Mr. Redd's inability to pay.
2      As I said, I have carefully considered the factors at
3  3553(a).  These include the history and characteristics of
4  Mr. Redd.  He has no significant criminal history.  He is very
5  young.  He has in his past faced mental health challenges.  He
6  lived for a time in foster care.  He has a documented substance
7  abuse problem.
8      I have also considered the nature and circumstances of the
9  offense here.  This was, frankly, a brazen and dangerous
10 carjacking.  As I outlined at the outset of the hearing, the
11 guidelines produce a total offense level of 24 against a
12 criminal history category of I.  This results in a recommended
13 range of 51 to 63 months in custody, a fine range of 20,000 to
14 200,000, and a supervised release range of one to three years.
15     I conclude that a modest downward variance of three months,
16 owing to Mr. Redd's mental health challenges, his youth, and his
17 substance abuse history is appropriate in this case.
18     The resulting sentence still properly reflects the
19 seriousness of this violent offense.  It will promote respect
20 for the law and afford adequate deterrence.
21     I conclude further that a sentence of 48 months, followed by
22 three years of supervised release, will protect the public from
23 further crimes of the defendant and is sufficient but not
24 greater than necessary to comply with the purposes set forth in
25 Section 3553(a)(2).  It is consistent with the parties' plea

1   agreement.  In sum, it is just punishment under the
2   circumstances and facts of this case.
3       Ms. Ford, Mr. Clark, are there any objections to the
4   sentence that I've just announced or the special conditions
5   imposed which have not previously been raised?
6           MS. FORD:  No objections by the United States, Your
7   Honor.
8           MR. CLARK:  No objection, Your Honor.
9           THE COURT:  Let's talk now about Mr. Redd's appeal
10  rights.
11      Ms. Ford, I believe the parties' plea agreement contains an
12  appeal waiver, does it not?
13          MS. FORD:  It does, Your Honor, in paragraph 12 of the
14  plea agreement.
15          THE COURT:  And so, Mr. Redd, you may recall from your
16  change of plea hearing we discussed how, in exchange for the
17  concessions made in your plea agreement, you agreed to waive
18  your right to appeal your guilty plea, conviction, or the
19  sentence that I just imposed here.
20      Now, these appeal waivers are generally considered valid,
21  but if you believe yours is invalid for any reason, you may
22  present that theory to the Court of Appeals.
23      You may also, as we have previously discussed, appeal on the
24  basis of either or both of the exceptions to your appeal waiver,
25  those being a claim of ineffective assistance of counsel or a

1  claim of prosecutorial misconduct.
2     To begin your appeal, you must first file a notice of
3  appeal. That must be done within 14 days of the entry of
4  judgment. If you need the assistance of the clerk's office in
5  filing that notice, they will assist you upon request.
6     If you cannot afford the fee associated with filing a notice
7  of appeal, you may ask that it be waived; and if you cannot
8  afford counsel on appeal, you may ask that counsel be appointed
9  to represent you free of charge. Do you understand these appeal
10 rights that I have outlined for you?
11          THE DEFENDANT: Yes, I do.
12          THE COURT: Anything further with respect to your
13 client's Rule 32 rights that we need to address?
14          MR. CLARK: No, Your Honor.
15          THE COURT: Anything by way of recommendation that you
16 would request be included in the J&C?
17          MR. CLARK: Your Honor, obviously, most defendants
18 request to be as close to home as practically possible, and
19 Mr. Redd would have the same request.
20          THE COURT: That's fine. Anything further in terms of
21 BOP programs?
22          MR. CLARK: Mr. Redd would like to take advantage of
23 the programs that he could, including SAP, if available.
24          THE COURT: All right. I will then include two
25 recommendations: one, that he be housed as close as possible to

1   his home in -- is Elizabethtown his home?
2              MR. CLARK:  Yes, Your Honor.
3              THE COURT:  -- as close as possible to Elizabethtown;
4   and then, secondly, that he be evaluated for any appropriate
5   substance abuse programs offered by BOP.
6       Anything else, Ms. Ford?
7              MS. FORD:  No.  Thank you, Judge.
8              THE COURT:  Before we recess, Mr. Redd, let me just
9   make an observation or two in closing.
10      This is a difficult day for you and your family, I know, but
11  I want to emphasize to you what Mr. Clark's probably already
12  prepared you for, which is that this day could have been a lot
13  worse.  If someone had gotten hurt during this carjacking, this
14  day would have looked a lot different.
15      And you have benefitted here by your counsel's advocacy and
16  by a very reasonable position that the Government took here with
17  respect to the -- both the charges as well as the plea
18  agreement.
19      And so as young as you are, you have the ability to put this
20  ultimately behind you after you serve your time.  There is no
21  magic formula going forward.  It's been my experience -- and
22  I've made these kinds of comments in many other hearings to many
23  other defendants -- that it comes down to decision-making on
24  your part.
25      You will have, when you get out, three years of supervised

1   release.  There are two ways of looking at that.  One is to look
2   at it as a nuisance, an annoyance, something you have to put up
3   with.  I hope you won't adopt that attitude.
4       The other way of looking at it is that the probation
5   officers really do want you to succeed.  And I can tell you from
6   where I sit, that's true.  I talk to them almost every day about
7   a case, and that is their goal.  They want the folks that
8   they're working with to succeed.  They will equip you.  They
9   will send you to classes.  They will send you to therapy.  They
10  will help you transition back to your family, back to freedom
11  after these next few years.  And you can -- as young as you are,
12  you can take advantage of this, and you can spend the next 60 or
13  70 years of your life just being what you want to be and staying
14  away from these kinds of entanglements.
15      This was a huge mistake that you made, huge mistake, and it
16  could have gone so badly.  It could have ruined lives.  Take
17  advantage of the second chance and cooperate, work with the
18  probation office.  And I hope that I'll get reports that say
19  that Mr. Redd is doing what he needs to do.  He's working.  He's
20  spending time with his family, and he's put all this behind him.
21      Is that where you see yourself going?
22          THE DEFENDANT:  Yes.
23          THE COURT:  Good.  Make that decision, turn that
24  corner, and stay on the path.  All right?  Thank you.
25      (Proceedings concluded at 10:04 a.m.)

```
1                    C E R T I F I C A T E

2        I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

3    THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

4

5
            s/Dena Legg                          September 1, 2023
6    Certified Court Reporter No. 20042A157    Date
     Official Court Reporter
7
```